

| UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY |
|---|
| Caption in Compliance with D.N.J. LBR 9004-2(c)<br><br>PLATZER, SWERGOLD, KARLIN,<br>LEVINE, GOLDBERG & JASLOW, LLP<br>Plaza 1000 at Main Street<br>Suite 208<br>Voorhees, New Jersey 08043<br>-and-<br>1065 Avenue of the Americas - 18th Floor<br>New York, New York 10018<br>Telephone: (212) 593-3000<br>Facsimile: (212) 593-0353<br>Clifford A. Katz, Esq. (CAK/4056)<br>Teresa Sadutto-Carley, Esq. (TS/7034)<br>Attorneys for the Debtor |
| In re:<br><br>    E.C.D., Inc.,<br><br>               Debtor. |

Chapter 11

Case No.: 09-11467 (MS)

Judge: Honorable Morris Stern

## FINAL ORDER AUTHORIZING THE DEBTOR'S USE OF
## CASH COLLATERAL *NUNC PRO TUNC* FROM PETITION DATE

The relief set forth on the following pages, numbered two (2) through thirteen (13), is hereby **ORDERED**.

3/17/09

(Page 2)
Debtor:            E.C.D., Inc.
Case No.:          09-11467 (MS)
Caption of Order:  FINAL ORDER AUTHORIZING THE DEBTOR'S USE
                   OF CASH COLLATERAL *NUNC PRO TUNC* FROM PETITION DATE

---

This matter is before the Court on the motion of E.C.D., Inc., the debtor (the "Debtor"), by and through its counsel, Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP, seeking, *inter alia*, entry of a final order (the "Final Order") authorizing the Debtor to use cash collateral pursuant to Section 363(c)(2)(A) of Title 11 of the United States Code, as amended (the "Bankruptcy Code") and Fed. R. Bankr. P. 4001(b) and (d) (the "Motion").

The Court having considered the Motion, the exhibits attached thereto, and the evidence submitted at the hearing on this Final Order (the "Final Hearing"); and in accordance with Rules 2002, 4001(b), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), due and proper notice of the Motion and the Final Hearing having been given; an interim hearing having been held and concluded on February 9, 2009 (the "Interim Hearing"); and an interim order having been entered on February 9, 2009 (the "Interim Order"); and a Final Hearing having been held and concluded on March 16, 2009; and it appearing that approval of the final relief requested in the Motion is necessary and otherwise is fair and reasonable and in the best interests of the Debtor, its creditors, estate and equity holders, and is essential for the continued operation of the Debtor's business; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled by the Court; upon the record made by the Debtor at the Interim Hearing and the Final Hearing, including the Motion, the filings and pleadings in the Case, and after due deliberation and consideration, and for good and sufficient cause appearing therefore;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

(Page 3)
Debtor: E.C.D., Inc.
Case No.: 09-11467 (MS)
Caption of Order: FINAL ORDER AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL *NUNC PRO TUNC* FROM PETITION DATE

---

A. <u>Notice and Hearing</u>. Notice of the motion and order shortening time pursuant to D.N.J. LBR 9013-1(e) and Federal Rule 9006(c) for the preliminary hearing on the Debtor's use of cash collateral has been served in accordance with Section 102(1) of the Bankruptcy Code and Fed. R. Bankr. P. 4001(b) and (d), which notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Federal Rules of Bankruptcy Procedure in respect to the relief requested; and due notice of the Final Hearing having been given in accordance with the Interim Order.

B. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over these proceedings, and the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue of the Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C. <u>Petition Filed</u>. North American Stainless, Outkumpu Stainless, Inc. and Carpenter Technology Corp. (collectively, the "Petitioning Creditors") filed an involuntary petition against the Debtor under Chapter 7 of the Bankruptcy Code on January 23, 2009 (the "Petition Date"). On February 9, 2009, the Debtor consented to the entry of an order for relief and voluntarily converted its case to a case under Chapter 11 of the Bankruptcy Code. The Debtor continues in the operation of its business and manages its property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the case. An official committee of unsecured creditors (the "Committee") was appointed in the case on February 26, 2009.

(Page 4)
Debtor:              E.C.D., Inc.
Case No.:            09-11467 (MS)
Caption of Order:    FINAL ORDER AUTHORIZING THE DEBTOR'S USE
                     OF CASH COLLATERAL *NUNC PRO TUNC* FROM PETITION DATE

---

D. **Debtor's Acknowledgements and Agreements.** After consultation with its attorneys, but without prejudice to the rights of parties in interest as set forth in paragraph 6 herein, the Debtor admits, stipulates, acknowledges and agrees (collectively, paragraphs D(i) through D(iv) hereof shall be referred to herein as the "Debtor's Stipulations"), as follows:

(i) **Pre-Petition Credit Liens.** Prior to the Petition Date, Wells Fargo Bank, National Association, acting though its Wells Fargo Business Credit operating division ("Wells Fargo") made loans and advances and provided credit accommodations to the Debtor pursuant to (i) the Amended and Restated Credit and Security Agreement, dated as of April 25, 2007, by and between Wells Fargo, the Debtor and AJR Equipment Limited Liability Company, as amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date (the "Pre-Petition Credit Agreement"),[1] and (ii) all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of Wells Fargo, including, without limitation, the security agreements, notes, guarantees, mortgages, and Uniform Commercial Code ("UCC") financing statements and all other related agreements, documents, and instruments executed and/or delivered in connection therewith or related thereto;

(ii) **Pre-Petition Obligations Amount.** As of the Petition Date, the aggregate amount of all loans and other pre-petition obligations totaled the aggregate amount of $2,876,786.99, plus all costs, expenses, fees (including attorneys' fees and legal expenses) and other charges, plus any further advances and less any collected and applied proceeds (collectively the "Pre-Petition Obligations").

(iii) **Pre-Petition Collateral.** As of the Petition Date, the Pre-Petition Obligations are secured pursuant to the Pre-Petition Credit Agreement by security interests and liens (the "Pre-Petition Credit Liens") granted by the Debtor to the Wells Fargo upon all of the Debtor's Accounts, chattel paper and electronic chattel paper, deposit accounts, documents, Equipment, General Intangibles, goods, instruments, Inventory, Investment Property, letter-of-credit rights, letters of credit, all sums on deposit in any Collateral Account, and any items in any Lockbox; together with (i) all substitutions and replacements for and products of any of the foregoing; (ii) in the case of all goods, all accessions; (iii) all accessories, attachments, parts, equipment and repairs now or hereafter attached or affixed to or used in connection with any goods; (iv) all warehouse receipts,

---

[1] For purposes of this paragraph D only, all capitalized terms used but not defined herein shall be defined in the Pre-Petition Credit Agreement.

(Page 5)
Debtor:              E.C.D., Inc.
Case No.:            09-11467 (MS)
Caption of Order:    FINAL ORDER AUTHORIZING THE DEBTOR'S USE
                     OF CASH COLLATERAL *NUNC PRO TUNC* FROM PETITION DATE

---

bills of lading and other documents of title now or hereafter covering such goods; (v) all collateral subject to the Lien of any Security Document; (vi) any money, or other assets of the Borrower that now or hereafter come into the possession, custody, or control of the Lender; (vii) all sums on deposit in the Special Account; (viii) proceeds of any and all of the foregoing; (ix) books and records of the Borrower, including all mail or electronic mail addressed to the Borrower; and (x) all of the foregoing, whether now owned or existing or hereafter acquired or arising or in which the Borrower now has or hereafter acquires any rights (collectively, the "Pre-Petition Collateral"),[2] with priority over all other liens except for any liens otherwise permitted by the Pre-Petition Credit Agreement.

The Debtor does not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Wells Fargo's liens, claims and/or security interests in the Pre-Petition Collateral.

(iv)    Pre-Petition Credit Agreement. (a) As of the Petition Date, (i) the Pre-Petition Credit Liens are valid, binding, enforceable, and perfected first-priority liens and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) the Pre-Petition Obligations constitutes legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms thereof (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition Debt exists, and no portion of the Pre-Petition Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) the Pre-Petition Obligations constitute an allowed secured claim, and (b) on the date that this Interim Order is entered, the Debtor has waived, discharged and released Wells Fargo, together with its affiliates, agents, attorneys, officers, directors and employees, any right the Debtor may have (x) to challenge or object to any of the Pre-Petition Obligations, (y) to challenge or object to the security for the Pre-Petition Obligations, and (z) to bring or pursue any and all claims, objections, challenges, causes of action and/or chooses in action arising out of, based upon or related to the Pre-Petition Credit Agreement or otherwise.

E.    Cash Collateral.    "Cash Collateral" is defined by Section 363(a) of the Bankruptcy Code, and includes post-petition proceeds, products, offspring, rents, or profits of

---

[2] The acknowledgment and agreement by the Debtor of the Pre-Petition Obligations and the liens, rights priorities and protections granted to or in favor of Wells Fargo, as set forth herein and in the Pre-Petition Credit Agreement, shall constitute a proof of claim on behalf of Wells Fargo in the Debtor's bankruptcy case.

(Page 6)
Debtor:           E.C.D., Inc.
Case No.:         09-11467 (MS)
Caption of Order: FINAL ORDER AUTHORIZING THE DEBTOR'S USE
                  OF CASH COLLATERAL *NUNC PRO TUNC* FROM PETITION DATE

---

property subject to a security interest as provided in Section 522(b) and as the term "proceeds" is described in U.C.C. Section 9-102.

F.   **Necessity and Best Interest**.  The Debtor does not have sufficient unencumbered cash or other assets with which to continue to operate its business.  The Debtor requires immediate authority to use Cash Collateral as defined herein in order to continue its business operations without interruption.  The Debtor's use of Cash Collateral, to the extent and on the terms and conditions set forth herein and the Pre-Petition Credit Agreement, is necessary to avoid immediate and irreparable harm to its estate pending a final hearing.

G.   **Budget**.  The Debtor has prepared and delivered to Wells Fargo, a budget (the "Budget") a copy of which is annexed hereto as **Exhibit A**.  The Budget has been thoroughly reviewed by the Debtor and its management and sets forth, among other things, the projected cash receipts and disbursements for the periods covered thereby.  The Debtor believes in good faith that the Budget is achievable and will allow the Debtor to operate in Chapter 11 without the accrual of unpaid administrative expenses during the term of the Budget.  Wells Fargo is relying upon the Debtor's compliance with the Budget and this Final Order in determining to allow the use of its Cash Collateral as authorized herein.

H.   **Purposes**.  The Debtor is authorized to use Cash Collateral, *nunc pro tunc* from the Petition Date, to meet the ordinary cash needs of the Debtor and for such other purposes necessary to (a) maintain and preserve its assets, and (b) continue operation of its business, including payroll and payroll taxes, and other expenses.

(Page 7)
Debtor: E.C.D., Inc.
Case No.: 09-11467 (MS)
Caption of Order: FINAL ORDER AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL *NUNC PRO TUNC* FROM PETITION DATE

---

The Court having determined there is a reasonable likelihood that the Debtor will prevail upon the merits at the final hearing on the motion as required by Section 363(c)(3) of the Bankruptcy Code, and for good cause shown;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:**

1. <u>Use of Cash Collateral</u>. The Debtor is authorized and in accordance with this Final Order, the Pre-Petition Credit Agreement and the Budget, to use Cash Collateral, *nunc pro tunc* from the Petition Date, for the following purposes:

   a. maintenance and preservation of its assets; and

   b. the continued operation of its business, including but not limited to payroll, payroll taxes, employees expenses and other costs; and

   c. the collection of its accounts receivable.

No proceeds of the Pre-Petition Collateral may be utilized by the Debtor to finance in any way any professional fees, disbursements, costs or expenses incurred in connection with asserting, or preparing, any claims or causes of action against Wells Fargo, or its counsel or advisors (including advisors to their counsel), arising from or relating to the Pre-Petition Credit Agreement or this Interim Order and/or investigating, challenging or raising any defenses to the Pre-Petition Obligations and/or liens arising under the Pre-Petition Credit Agreement or this Interim Order.

2. <u>Adequate Protection</u>. As adequate protection for the use of Cash Collateral, Wells Fargo is GRANTED, *nunc pro tunc* from the Petition Date:

(Page 8)
Debtor: E.C.D., Inc.
Case No.: 09-11467 (MS)
Caption of Order: FINAL ORDER AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL *NUNC PRO TUNC* FROM PETITION DATE

---

a. <u>Replacement Lien and Cash Payments</u>. Subject to the Carve-Out (as such term is defined herein), a replacement perfected security interest under Sections 361(1) and 361(2) of the Bankruptcy Code to the extent Wells Fargo's respective Cash Collateral is used by the Debtor, to the extent and with the same priority in the Debtor's post-petition assets, and proceeds thereof, that Wells Fargo held in the Pre-Petition Collateral. Within two (2) business days after the end of each week, the Debtor shall transfer to Wells Fargo, all cash proceeds of Pre-Petition Collateral in excess of the Debtor's actual disbursements paid for such week in accordance with the Budget (subject to the Variance (as such term is defined herein)). Wells Fargo shall be permitted to receive and collect payments and proceeds in respect of the Pre-Petition Collateral, including any Cash Collateral or adequate protection payments, and to apply the same to the Pre-Petition Obligations in accordance with the Pre-Petition Credit Agreement, or as otherwise provided under the terms and provisions of this Final Order.

b. <u>Statutory Rights Under Section 507(b)</u>. Subject to the Carve-Out, to the extent the adequate protection provided for hereby proves insufficient to protect Wells Fargo's interests in and to the Cash Collateral, Wells Fargo shall have a superpriority administrative expense claim, pursuant to Section 507(b) of the Bankruptcy Code, senior to any and all claims against the Debtor under Section 507(a) of the Bankruptcy Code, whether in this proceeding or in any superseding proceeding.

c. <u>Deemed Perfected</u>. The replacement liens and security interests granted herein are automatically deemed perfected upon entry of this Order without the necessity of Wells Fargo taking possession, filing financing statements, mortgages or other documents.

(Page 9)
Debtor: E.C.D., Inc.
Case No.: 09-11467 (MS)
Caption of Order: FINAL ORDER AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL *NUNC PRO TUNC* FROM PETITION DATE

---

Although not required, upon request by Wells Fargo, the Debtor shall execute and deliver to Wells Fargo and any and all UCC Financing Statements, UCC Continuation Statements, Certificates of Title or other instruments or documents considered by Wells Fargo to be necessary in order to perfect the security interests and liens in the Debtor's post-petition collateral and proceeds granted by this Final Order, and Wells Fargo is authorized to receive, file and record the foregoing at Wells Fargo's own expense, which actions shall not be deemed a violation of the automatic stay.

    d.    <u>Weekly Reports</u>. Within three (3) business days after the end of each week, the Debtors shall provide Wells Fargo and counsel for the Committee with a reconciliation, in form and substance acceptable to Wells Fargo substantially consistent with the Debtor's form of the Budget annexed hereto as **Exhibit A**, of the actual cash receipts and disbursements of the Debtor for such week to the budgeted line item amounts set forth in the Budget for such week. The amount of any revenues for any weekly or cumulative basis shall not be less than ninety percent (90%) of the Budget, the disbursements by line item in the aggregate shall not be more than one hundred ten percent (110%) of the Budget, and the overall net cash flow shall not be less than ninety percent (90%) of the Budget at the end of each week (the "Variance"). In addition, the Debtor shall provide Wells Fargo and counsel for the Committee all other reports required by the Pre-Petition Credit Agreement and any other reports reasonably required by Wells Fargo, as well as copies of the Debtor's monthly United States Trustee operating reports.

(Page 10)
Debtor: E.C.D., Inc.
Case No.: 09-11467 (MS)
Caption of Order: FINAL ORDER AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL *NUNC PRO TUNC* FROM PETITION DATE

---

e.  **Default Hearing.** In the event Debtor defaults or violates this Final Order or the Pre-Petition Credit Agreement, Wells Fargo is entitled to request a hearing within five (5) days (or if immediate and irreparable injury, loss or damage may occur, an emergency hearing within forty-eight (48) hours).

3.  **Modification of Stay.** The automatic stay extant under Section 362(a) of the Bankruptcy Code shall be, and it hereby is, modified, *nunc pro tunc* from the Petition Date, to the extent necessary (a) to permit Wells Fargo to receive and collect payments and proceeds in respect of the Pre-Petition Collateral, including any Cash Collateral or adequate protection payments, and for Wells Fargo to apply the same in accordance with the Pre-Petition Credit Agreement, or as otherwise provided under the terms and provisions of this Final Order, and (b) to effectuate the terms and provisions of this Final Order.

4.  **Creditor's Rights of Inspection and Audit.** Upon reasonable notice by Wells Fargo, the Debtor shall permit Wells Fargo and any of its respective agents reasonable and free access to the Debtor's records and place of business during normal business hours to verify the existence, condition and location of collateral in which Wells Fargo holds a security interest and to audit Debtor's cash receipts and disbursements.

5.  **Reservation of Certain Third Party Rights and Bar of Challenges and Claims.** Nothing in this Final Order shall prejudice the rights the Committee or any other party in interest with requisite standing other than the Debtor to (a) to object to or challenge the findings herein with respect to Wells Fargo, including, but not limited to, those in relation to (i) the validity, extent, perfection or priority of the security interests and liens of Wells Fargo in and to the Pre-

(Page 11)
Debtor:            E.C.D., Inc.
Case No.:          09-11467 (MS)
Caption of Order:  FINAL ORDER AUTHORIZING THE DEBTOR'S USE
                   OF CASH COLLATERAL *NUNC PRO TUNC* FROM PETITION DATE

---

Petition Collateral, or (ii) the validity, allowability, priority, status or size of the Pre-Petition Obligations, or (b) to bring suit against Wells Fargo in connection with or related to the Pre-Petition Credit Agreement, or the actions or inactions of Wells Fargo arising out of or related to the Pre-Petition Credit Agreement; provided, however, that, unless the Committee or any other party in interest with requisite standing commences a contested matter or adversary proceeding raising such objection or challenge, including without limitation any claim against Wells Fargo in the nature of a setoff, counterclaim or defense to the Pre-Petition Obligations (including but not limited to, those under Sections 506, 544, 547, 548, 550 and/or 552 of the Bankruptcy Code or by way of suit against the Wells Fargo), within sixty (60) days following the appointment of the first Committee, (the "Challenge Period" )and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period shall be referred to as the "Challenge Period Termination Date"), upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, any Committee and any Chapter 11 or Chapter 7 trustee appointed herein or in any Successor Case) shall be deemed to be forever waived and barred, and the Pre-Petition Debt shall be deemed to be allowed in full and, to the extent of the value of the Pre-Petition Collateral on the Petition Date, shall be deemed to be allowed for all purposes in connection with the Debtor's case and the Debtor's Stipulations shall be binding on all creditors, interest holders, parties in interest trustees, successors and assigns.

    6.     <u>Carve-Out.</u> The Adequate Protection Liens and Adequate Protection Superpriority Administrative Expense Claim granted to Wells Fargo herein shall be subject and

(Page 12)
Debtor: E.C.D., Inc.
Case No.: 09-11467 (MS)
Caption of Order: FINAL ORDER AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL *NUNC PRO TUNC* FROM PETITION DATE

---

subordinate only to the Carve-Out. For purposes of this Final Order, Carve-Out shall mean: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. Section 1930(a) and (ii) all accrued and unpaid fees and expenses incurred in the Debtor's case by professionals retained by the Debtor or the Committee (if any) in an amount not to exceed the allowed fees and expenses of such professionals up to the amounts set forth in the Budget for such professionals (exclusive of any fees, retainers and expenses paid prior to the Petition Date), provided, however, that no more than an aggregate of $7,500.00 of the Pre-Petition Collateral (including the Cash Collateral) or the Carve-Out may be used by the Committee to investigate Wells Fargo's claims and liens.

7. **Limitations on Charging Expenses Against Collateral.** Notwithstanding anything to the contrary contained herein, except to the extent of the Carve-Out, (a) no costs or expenses of administration of the Debtor's Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from Wells Fargo's collateral, including but not limited to the Pre-Petition Collateral and the Cash Collateral, pursuant to Section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of Wells Fargo, (b) no such consent shall be implied from any other action, inaction, or acquiescence by Wells Fargo, and (c) nothing contained in the Interim Order or this Final Order shall be deemed to be a consent by Wells Fargo to any charge, lien, assessment or claim against Well Fargo's collateral, including but not limited to the Pre-Petition Collateral and the Cash Collateral under Section 506(c) of the Bankruptcy Code or otherwise.

(Page 13)
Debtor: E.C.D., Inc.
Case No.: 09-11467 (MS)
Caption of Order: FINAL ORDER AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL *NUNC PRO TUNC* FROM PETITION DATE

---

8. <u>Notice.</u> The Debtor shall promptly mail copies of this Final Order to the parties having been given notice of the Final Hearing, and to any other party that has filed a request for notices with the Court.

# EXHIBIT A

3/12/2009                  C:\Documents and Settings\hennys\Local Settings\Temporary Internet Files\Content.Outlook\IK13U0K0X\chap11_budget031209

| Week number | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|
| Week of | 9-Mar | 16-Mar | 23-Mar | 30-Mar | 6-Apr | 13-Apr | 20-Apr | 27-Apr |
| Collections | 125,000 | 150,000 | 150,000 | 100,000 | 180,000 | 75,000 | 75,000 | 250,000 |
| Billings | | | | | | | | |
| **Disbursements:** | | | | | | | | |
| **Operating Costs** | | | | | | | | |
| Payroll - Gross | 16,142 | 9,071 | 9,071 | 18,071 | 9,071 | 9,071 | 9,071 | 0 |
| Benefits, Net | (275) | (175) | (175) | (175) | 4,883 | (175) | (175) | 5,058 |
| Benefits Company | 0 | 0 | 0 | | 5,058 | 0 | 0 | 5,058 |
| Other Benefits/Withholding | 275 | 175 | 175 | 175 | 175 | 175 | 175 | 0 |
| Total Payroll and Benefits | 15,867 | 8,896 | 8,896 | 17,896 | 13,954 | 8,896 | 8,896 | 5,058 |
| Misc Expense | 10,300 | 10,300 | 11,455 | 7,675 | 9,300 | 7,300 | 9,170 | 12,000 |
| Electric | | | 20,000 | | | | | 10,000 |
| Gas | | | 16,000 | | | | | 8,000 |
| water & sewer | | 7,600 | | | | | | |
| utility deposits | | | | | | | | |
| Insurance | | | | | | | | |
| US trustee | | | | | | 4,875 | | |
| debtor legal | 10,000 | 5,000 | 10,000 | | | | | |
| creditors committee | 3,000 | 3,000 | 3,000 | | 3,000 | 3,000 | | 10,000 |
| accounting | 0 | 0 | 0 | 0 | | | | |
| NachmanHays | 0 | 0 | 0 | | | | | |
| Capital Leases | | | | | | | | |
| Wells Fargo Lease | 0 | 0 | 2,648 | 0 | | | | |
| Prop taxes | 0 | 0 | 0 | | | | | |
| Forklift leases/rent | 0 | 0 | 0 | 0 | | | | |
| Other Operating Expenses | 0 | 0 | 0 | 0 | | | | |
| Subtotal Operating | 39,167 | 34,796 | 71,999 | 25,571 | 26,254 | 24,071 | 18,066 | 45,058 |
| Bank Items | | | | | | | | |
| Principle Payment on Term Loa | 0 | 0 | 0 | 25,177 | | | | |
| Total Disbursements | 39,167 | 34,796 | 71,999 | 50,748 | 26,254 | 24,071 | 18,066 | 45,058 |
| Collections less Disbursement | 85,833 | 115,204 | 78,001 | 49,252 | 153,746 | 50,929 | 56,934 | 204,942 |
| Cummulative Transfer to WF | 630,049 | 745,253 | 823,254 | 872,506 | 1,026,251 | 1,077,180 | 1,134,114 | 1,339,056 |